IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ZACHARY FORREST MARQUART, | Case No. 3:24-cv-236-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| CITY OF SHANIKO; DAVID R. LONG; DIANA L. MARRS; SCOTT W. MARRS; DONALD RAY TREANOR; RICHARD JERRY CEREGHINO; SANDRA L. CEREGHINO; GOLDIE LEE ROBERTS; ANDREA VICTORIA KEGEL; SANDRA J. THOMAS; and NICK NIMMS, | |
| Defendants. | |

Zachary Forrest Marquart, Plaintiff, *Pro Se.*

Aaron Hisel, CAPITOL LEGAL SERVICES, 901 Capitol Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Zachary Forrest Marquart, representing himself, brings this lawsuit against the

City of Shaniko (City) and the following ten individual defendants: David R. Long, Diana L.

Marrs, Scott W. Marrs, Donald Ray Treanor, Richard Jerry Cereghino, Sandra L. Cereghino,

Goldie Lee Roberts, Andrea Victoria Kegel, Sandra J. Thomas, and Nick Nimms (Individual

Defendants) (collectively with the City, Defendants). Plaintiff asserts against Defendants the following twelve federal and state claims: (1) violations of the Fair Housing Act; (2) discrimination based on sexual orientation in violation of Oregon law; (3) private nuisance under Oregon law; (4) public nuisance under Oregon law; (5) intentional or negligent infliction of emotional distress; (6) negligence; (7) breach of the common law covenant of quiet enjoyment; (8) "common law conflict of interest"; (9) violations of Title II of the Americans with Disabilities Act (ADA); (10) violations of the Oregon Bicycle Bill; (11) conversion; and (12) encroachment in a public right of way. Plaintiff's claims arise out of a series of events beginning in early 2021, when Plaintiff purchased property in Shaniko, Oregon.

The parties have filed the following four motions: Defendants' Motion for Extension of Time (ECF 8), which Plaintiff opposes; Plaintiff's Motion for Entry of Default (ECF 12), which Defendants oppose; Defendants' Motion to Dismiss (ECF 13), which Plaintiff opposes; and Plaintiff's Motion to Strike (ECF 16), which Defendants oppose. For the reasons explained below, the Court grants *nunc pro tunc* Defendants' Motion for Extension of Time, grants in part and denies in part Defendants' Motion to Dismiss, denies Plaintiff's Motion for Entry of Default, and denies Plaintiff's Motion to Strike.

## STANDARDS

### A.  Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## B. *Pro Se* Plaintiffs

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is

absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice

of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."

*Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original)

(quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under

Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." This

standard "does not require 'detailed factual allegations,'" but does demand "more than an

unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## C.  Entry of Default and Default Judgment

Under Rule 55(a) of the Federal Rules of Civil Procedure, a court may enter an order of

default if a party against whom affirmative relief is sought fails timely to answer or otherwise

defend an action. After entry of default, the court may accept "the well-pleaded factual

allegations" of the complaint "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th

Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). A

court, however, may not accept as admitted facts that are not well-pleaded, conclusions of law,

or facts relating to the amount of damages. *DIRECTV*, 503 F.3d at 854; *Geddes*, 559 F.2d at 560;

*see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The

general rule of law is that upon default the factual allegations of the complaint, except those

relating to the amount of damages, will be taken as true." (quoting *TeleVideo Sys., Inc. v.

Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987))).

After default has been entered against a defendant, a court may enter a default judgment against that defendant. *See* Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court decision whether to enter a default judgment is reviewed for abuse of discretion). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set out factors to guide a district court's consideration of whether to enter a default judgment. *DIRECTV*, 503 F.3d at 852. The Ninth Circuit in *Eitel* held:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d at 1471-72. Further, the "starting point" of the court's analysis "is the general rule that default judgments are ordinarily disfavored." *Id.* at 1472.

## BACKGROUND

This lawsuit centers on events after Plaintiff's purchase of a parcel of land in early 2021.[1] When Plaintiff purchased the property, which is situated in rural Oregon but within the City's boundary, it lacked all utility services, including municipal power and water hook-ups. Plaintiff alleges that as he attempted to coordinate the necessary services for his property, and he began to experience "malicious" interactions with townspeople, many of whom are current or former members of the City council and some of whom are named as Individual Defendants in this

---

[1] The facts recited in this paragraph are a summary of the central allegations made in Plaintiff's Complaint, ECF 1.

action. Plaintiff alleges that Defendants, through their various positions of power, conspired to deny Plaintiff and his property access to public municipal services, road maintenance, and trash collection services, and refused to assign to Plaintiff's property a physical address. Plaintiff further alleges that Defendants and other townspeople committed "bias" crimes against him, subjected Plaintiff to discrimination because Plaintiff identifies as bisexual, and generally engaged in a pattern of threatening and intimidating behavior towards Plaintiff. According to Plaintiff, Defendants engaged in this wide-ranging conspiracy "with the goal of trying to scare [Plaintiff] enough that [he] would leave [his] property and never come back."

Plaintiff filed this lawsuit on February 2, 2024, asserting federal and state statutory claims and state common law claims against the City and Individual Defendants. Plaintiff then completed service of the Complaint and Summons on most, but not all, Defendants. Service was completed on the City, David Long, and Diana Marrs on February 6th; on Andrea Kegel, Scott Marrs, and Sandra Thomas on February 23rd; on Richard Cereghino and Sandra Cereghino on March 13th; and on Goldie Roberts on March 20th. Plaintiff has not filed proof of service of the Complaint and Summons on Donald Treanor.

On March 29, 2024, Defendants filed a Motion for Extension of Time, requesting that the Court grant an extension until April 12, 2024, for Defendants to answer or move against Plaintiff's Complaint. In this motion, Defendants stated that Plaintiff opposed any extension. Plaintiff, however, did not file a response to the Motion for Extension of Time. Instead, on April 11th, Plaintiff filed a Motion for Default. The next day, within the time requested in their Motion for Extension of Time, Defendants filed a Motion to Dismiss. On April 25th, Defendants responded to Plaintiff's Motion for Default. That same day, Plaintiff filed a Motion to Strike, asking the Court to strike from the record Defendants' Motion to Dismiss and Defendants'

Motion for Extension of Time. In this filing, in addition to raising procedural arguments, Plaintiff substantively responded to Defendants' Motion for Extension of Time and Defendants' Motion to Dismiss. On May 9, 2024, Defendants responded to Plaintiff's Motion to Strike.

## DISCUSSION

### A.  Motion for Extension of Time

The Court first addresses Defendants' Motion for Extension of Time. As explained above, on March 29, 2024, Defendants requested that the Court grant two additional weeks, until April 12th, for Defendants to answer or move against Plaintiff's Complaint. Defendants explained that the extension was necessary to accommodate Defendants' counsel's schedule and to allow Defendants to review the records related to other lawsuits filed by Plaintiff.

Plaintiff opposed the request for an extension. In Plaintiff's Motion to Strike, which the Court construes as a response to Defendants' Motion for Extension of Time, Plaintiff stated that he opposes an extension on the ground that it is untimely. Plaintiff, however, fails to identify any unfair prejudice resulting from a brief two-week extension of time for Defendants to appear in this action.

Defendants made clear on March 29th that they intended to appear in this action, and then appeared within the timeframe requested in their Motion for Extension of Time. Defendants stated that the request for an extension of time to appear was based on legitimate scheduling needs and was not made in bad faith or for purposes of delay. Accordingly, the Court grants *nunc pro tunc* Defendants' Motion for Extension of Time and accepts as timely Defendants' Motion to Dismiss.

### B.  Motion to Dismiss

Defendants move to dismiss Plaintiff's Complaint on several grounds. First, Defendants argue that some of Plaintiff's claims are barred by the doctrine of claim preclusion. Second,

Defendants argue that many of Plaintiff's allegations are independently barred by the *Rooker-Feldman* doctrine. Finally, Defendants argue that the remaining claims (*i.e.*, those not barred by claim preclusion or *Rooker-Feldman*) should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 1.   Claim Preclusion

Defendants argue that many of Plaintiff's claims are barred by the doctrine of claim preclusion because the parties have engaged in previous litigation over the same or substantially similar claims. Plaintiff, in response,[2] argues that he brings claims in this lawsuit for "brand-new violations of law" that have not been litigated before.

### a.   Request for Judicial Notice

In connection with their argument that many of Plaintiff's asserted claims are barred by claim preclusion, Defendants ask the Court to take judicial notice of prior lawsuits filed by Plaintiff in both state and federal court. "[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Further, "[a] court may take judicial notice of complaints and briefs filed in another case to determine what issues were before the court and actually litigated." *See Dauven v. U.S. Bancorp*, 390 F. Supp. 3d 1262, 1269 (D. Or. 2019); *see also Mitchell v. County of Contra Costa*, 600 F. Supp. 3d 1018, 1026 (N.D. Cal. 2022) ("The court takes judicial notice of the existence of the lawsuits and the

---

[2] Plaintiff did not file a response brief to Defendants' Motion to Dismiss. Instead, in Plaintiff's Motion to Strike, Plaintiff included substantive arguments in opposition to the Motion to Dismiss. The Court construes Plaintiff's Motion to Strike as a response to Defendants' Motion to Dismiss.

allegations . . . therein because they relate to Plaintiff's *Monell* allegations; it does not take judicial notice of the facts within the complaints.").

The Court grants Defendants' request and takes judicial notice of the existence of the following civil lawsuits and relevant pleadings: *Forrest Marquart v. City of Shaniko, Donald Treanor, Lyle Johnson, Richard Cereghino, and Sandra Cereghino*, No. 21CV38660 (Wasco Cnty. Cir. Ct., filed Sept. 28, 2021); *Zachary Forrest Marquart v. Diana L. Marrs*, No. 23CV25544 (Multnomah Cnty. Cir. Ct., filed June 26, 2023); and *Zachary Forrest Marquart v. City of Shaniko*, No. 23CV49007 (Multnomah Cnty. Cir. Ct., filed Dec. 1, 2023). The Court also takes judicial notice of the following small claims actions and the relevant pleadings: *Zachary Forrest Marquart v. City of Shaniko*, No. 22SC26542 (Wasco Cnty. Cir. Ct., filed Oct. 11, 2022); *Zachary Forrest Marquart v. City of Shaniko*, No. 23SC05052 (Wasco Cnty. Cir. Ct., filed Feb. 17, 2023); *Zachary Forrest Marquart v. Diana L. Marrs*, No. 23SC13726 (Multnomah Cnty. Cir. Ct., filed May 12, 2023); and *Zachary Forrest Marquart v. City of Shaniko*, No. 23SC30232 (Multnomah Cnty. Cir. Ct., filed Oct. 12, 2023). Finally, the Court *sua sponte* takes judicial notice of one federal civil lawsuit: *Marquart v. Richard J. Cereghino, Sandra L. Cereghino, Donald Ray Treanor, & Amy Cooper*, No. 3:22-cv-1072-MO (D. Or., filed July 19, 2022). With the benefit of the judicially noticed lawsuits and relevant pleadings, the Court analyzes which, if any, of Plaintiff's claims are subject to claim preclusion.

### b.  Precluded Claims

#### i.   Preclusive Effect of Plaintiff's Prior State-Court Lawsuits

The Court first examines the preclusive effect of the judgments in Plaintiff's state-court lawsuits. To determine whether a claim is precluded in a subsequent federal lawsuit, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City*

*Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Thus, the Court applies Oregon law when evaluating Defendants' arguments about the preclusive effect of the state-court lawsuits subject judicial notice.

Under Oregon law, a party is foreclosed from litigating the same claim "on any ground or theory of relief that the party could have litigated in the first instance." *Bloomfield v. Weakland*, 339 Or. 504, 511 (2005). "[C]ourts employ a broad definition of what could have been litigated." *Drews v. EBI Cos.*, 310 Or. 134, 141 (1990). "As a rule, a subsequent claim is barred by a prior judgment if [1] the earlier litigation proceeded to final judgment, [2] involved the same parties, and [3] concerned a claim arising out of the same transaction or series of related transactions." *Lucas v. Lake County*, 253 Or. App. 39, 53 (2012) (cleaned up). The key is whether the later claim "aris[es] from the same transactional nucleus of facts," giving "weight to such considerations as whether the facts are related in time, space, origin, or motivation and whether they form a convenient trial unit." *Id.* at 54 (cleaned up). "The purposes of claim preclusion include preventing 'harassment of defendants by successive legal proceedings,' 'economy of judicial resources,' and keeping claimants 'from having two bites at the apple.'" *Borough v. Caldwell ex rel. Loren M. Caldwell Tr.*, 314 Or. App. 62, 67 (2021) (quoting *Dean v. Exotic Veneers, Inc.*, 271 Or. 188, 192, 194 (1975)).

Regarding the first element of claim preclusion, most of the state-court lawsuits filed by Plaintiff against various Defendants have resulted in dismissals without prejudice. Dismissals without prejudice do not operate as a final judgment on the merits for purposes of claim preclusion. *Clark v. Gates*, 138 Or. App. 160, 165 (1995) ("A dismissal without prejudice cannot give rise to claim preclusion."). Two of Plaintiff's state-court lawsuits, however, have resulted in dismissals *with* prejudice, which is a final judgment on the merits for purposes of claim

preclusion. *See Wall v. Ash*, 328 Or. App. 22, 24 (2023) ("The term 'with prejudice,' expressed in a judgment of dismissal, has a well-recognized legal import, and operates as an adjudication on the merits. Thus, a dismissal with prejudice normally precludes a later action.").

First, the case styled as *Forrest Marquart v. City of Shaniko, Donald Treanor, Lyle Johnson, Patty Johnson, Richard Cereghino, Sandra Cereghino*, No. 21CV38660 (Wasco Cnty. Cir. Ct.), was filed on September 28, 2021, and was dismissed with prejudice by stipulation on January 5, 2022. In that action, Plaintiff brought one claim for tortious conduct, alleging that the City and the named defendants improperly denied services to Plaintiff's property and subjected Plaintiff to harassment and threats. *See* ECF 14-1. The gravamen of the claims in this lawsuit also relate to the alleged denial of services to Plaintiff's property and Defendants' allegedly threatening conduct. Thus, the claims at issue in that lawsuit arise "from the same transactional nucleus of facts" as the claims in this lawsuit. *See Lucas*, 253 Or. App. at 54.

Plaintiff is precluded from bringing in this lawsuit claims against the City, Donald Treanor, Richard Cereghino, or Sandra Cereghino that could have been brought in that lawsuit. The Court dismisses with prejudice[3] all claims against the City, Donald Treanor, Richard Cereghino, or Sandra Cereghino based on allegations of conduct that occurred before September 28, 2021.

Second, the case styled as *Zachary Forrest Marquart v. City of Shaniko*, No. 22SC26542 (Wasco Cnty. Cir. Ct.) was filed on October 11, 2022, and was dismissed with prejudice on

---

[3] "Dismissal with prejudice is appropriate . . . when 'further amendment would be futile.'" *Espinoza v. Union of Am. Physicians & Dentists, AFSCME Loc. 206*, 562 F. Supp. 3d 904, 913 (C.D. Cal. 2022) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987), *aff'd*, 2023 WL 6971456 (9th Cir. Oct. 23, 2023)). Because amendment could not cure the preclusive nature of the claims brought in the earlier lawsuits, it is appropriate to dismiss these claims with prejudice.

November 21, 2022. In that small-claims court action, Plaintiff sued the City for violating the Oregon Public Meetings Law on January 13, 2022. ECF 14-2 at 3. Here, in the action before this Court, Plaintiff does not bring any *claims* for violating the Oregon Public Meetings Law. Plaintiff does, however, include *allegations* in support of other claims based on purported Oregon Public Meetings Law violations. *See, e.g.*, ECF 1 at 9. The critical inquiry for claim preclusion is whether the claim or theory at issue in the second lawsuit *could have* been litigated in the first lawsuit. *See Bloomfield*, 339 Or. at 511.

Claims based on allegations of Oregon Public Meetings Law violations occurring before January 13, 2022, could have been litigated in the previous small-claims action. Plaintiff, thus, is precluded from asserting in this lawsuit claims against the City based on such allegations. The Court dismisses with prejudice any claims against the City based on allegations of Oregon Public Meetings Law violations that occurred before October 11, 2022.

### ii.   Preclusive Effect of Plaintiff's Prior Federal-Court Lawsuit

The Court next examines the preclusive effect of the judgment in Plaintiff's federal-court lawsuit. When "the decision to be given preclusive effect was rendered by a federal court exercising federal-question jurisdiction, federal common law determines whether preclusion applies." *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). Thus, the Court looks to federal common law to determine the preclusive effect of the judgment in Plaintiff's federal lawsuit.

Under federal common law, claim preclusion "is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). For the identity of claims element, "[i]t is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry

is whether they *could have* been brought." *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) (emphasis added). In other words, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078. "[F]or purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017).

Plaintiff's federal case, *Marquart v. Richard J. Cereghino, Sandra L. Cereghino, Donald Ray Treanor, & Amy Cooper*, No. 3:22-cv-1072-MO (D. Or.), was filed on July 19, 2022, and was dismissed with prejudice on September 26, 2022. In that lawsuit, Plaintiff alleged violations of Plaintiff's rights under the Fair Housing Act and other federal civil rights laws based on the alleged denial of services to his property.

Plaintiff's Complaint in this action asserts a claim for violations of the Fair Housing Act, and Plaintiff asserts other claims based on allegations related to the denial of services to Plaintiff's property. Because these claims arise out of the same nucleus of operative facts as the claims in the prior federal lawsuit, the claims in this lawsuit against Richard Cereghino. Sandra Cereghino and Donald Treanor could have been (or were) brought in the previous federal lawsuit. Accordingly, Plaintiff is precluded from bringing any claims that could have been brought in that lawsuit. The Court dismisses with prejudice all claims against Richard Cereghino, Sandra Cereghino, and Donald Treanor based on allegations of conduct that occurred before July 19, 2022.

### 2. *Rooker-Feldman* Doctrine

Defendants next argue that the Complaint should be dismissed under the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine,[4] federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1142-43 (9th Cir. 2021). The scope of the *Rooker-Feldman* doctrine includes *de facto* appeals from a state court decision and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel v. Hall*, 341 F3d 1148, 1158 (9th Cir. 2003). A claim is inextricably intertwined with a state court judgment if the federal claim can succeed only to the extent that the state court wrongly decided the issues before it. *Doe & Assocs. Law Offs. v. Napolitano*, 252 F.3d 1026, 1029-30 (9th Cir. 2001). A claim also is "inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (quotation marks omitted).

Defendants argue that the "current suit operates as an impermissible de facto appeal" under *Rooker-Feldman* because "Plaintiff has multiple suits that have been dismissed at the circuit court level," citing the two Wasco County Circuit Court cases that resulted in dismissal with prejudice. Defendants contend that the "core complaints" of those previous actions mirror some of the factual allegations and claims in this case, and state that "[n]one of those cases, or their underlying factual disputes are appealable, directly or otherwise, in this Court." Defendants, however, fail to articulate how this lawsuit amounts to a "collateral attack" on those state-court judgments. The Court declines to dismiss any claims on this basis.

---

[4] The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

### 3.  Failure to State a Claim

#### a.  Defendants' Arguments

Defendants move to dismiss all remaining claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and advance four arguments in support of their motion. First, Defendants argue that Plaintiff's Complaint is insufficient to state a claim against Sandra Thomas, Andrea Kegel, and Nick Nimms because Plaintiff fails to include specific and substantive allegations against those Defendants. The Court agrees that the Complaint contains no substantive allegations related to Sandra Thomas or Andrea Kegel other than that they are current members of the City council. Such allegations are insufficient to support Plaintiff's claims against those Defendants. *See McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) ("Plaintiffs must allege more than generic and conclusory allegations demonstrating that 'Defendants' collectively engaged in [misconduct] and allege with at least some degree of specificity the acts which each defendant is alleged to have engaged in which support Plaintiff's claims." (citing cases)).

The Complaint also lacks sufficiently specific allegations related to Nick Nimms. Although Plaintiff alleges that Nick Nimms is "a friend and co-conspirator with Mr. and Mrs. Cereghino," that allegation alone is not sufficient to plead the existence of a civil conspiracy. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1085 (9th Cir. 2022) ("When pleading a claim for civil conspiracy, a plaintiff must plead with particular specificity as to the manner in which a defendant joined in the conspiracy and how he participated in it." (quotation marks omitted)). Plaintiff includes no factual allegations about how Nick Nimms—or any other Defendant—joined the alleged conspiracy or how any Defendants specifically participated in that alleged conspiracy.

Further, the Court notes that Plaintiff fails to include any specific allegations against Goldie Roberts. Plaintiff merely alleges, in a conclusory fashion, that she had "knowledge" of some of the purported misconduct underlying Plaintiff's claims. Accordingly, because Plaintiff fails adequately and plausibly to plead facts showing the participation of those persons in the alleged wrongs committed against him, Plaintiff's claims against Sandra Thomas, Andrea Kegel, Nick Nimms, and Goldie Roberts are dismissed without prejudice.

Second, Defendants argue that Plaintiff's claim for non-compliance with the ADA fails because Plaintiff does not allege facts sufficient to state such a claim. Plaintiff alleges that the City is "non-complian[t] with the ADA for all city sidewalks, fire department building(s), and city owned bathrooms," and failed to comply with the ADA in a remodel of a City building. Plaintiff also alleges that the City has failed to designate handicap parking spots for various buildings. Under the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff, however, does not allege that he is a qualified individual with a disability or that he has suffered any particularized injury because of the City's alleged failure to comply with the ADA. Plaintiff's ADA claim is dismissed without prejudice.

Third, Defendants argue, among other points, that Plaintiff's Oregon Bicycle Bill violation claim is barred by the applicable time limitation contained within Oregon Revised Statute (ORS) § 30.275. ORS § 30.275(2) provides that a notice of claim must be given within 180 days of the alleged loss or injury. Plaintiff's Oregon Bicycle Bill violation claim, based on allegations that the City failed to install a bike lane when a specific portion of a street was modified in 2007, falls well outside the permissible statutory timeframe to bring such a

claim. Accordingly, Plaintiff's Oregon Bicycle Bill violation claim is dismissed without prejudice, but Plaintiff may only replead this claim if he can allege in good faith that he complied with the statutory notice requirement.

Fourth, Defendants argue that Plaintiff's claim under ORS §§ 659A.885, 659A.400 and 659A.403 for discrimination based on sexual orientation fails because Plaintiff fails to attribute the primary factual allegation supporting this claim—the removal of Plaintiff's Pride Flag—to any specific Defendant or Defendants. Although Plaintiff does not attribute the removal of his Pride Flag to any Defendant, this allegation might support a reasonable inference that Defendants had knowledge of Plaintiff's status as bisexual.

More importantly, however, the removal of Plaintiff's Pride Flag is not the only allegation that Plaintiff makes in support of his discrimination claim. Plaintiff includes sufficiently specific allegations that David Long, Diana Marrs, Scott Marrs, Donald Treanor, Richard Cereghino, and Sandra Cereghino engaged in misconduct against Plaintiff because those individuals harbored discriminatory bias against Plaintiff because of his sexual orientation. Taking the allegations as true and liberally construing them in Plaintiff's favor, the Court declines to dismiss Plaintiff's discrimination claim against David Long, Diana Marrs, Scott Marrs, Donald Treanor, Richard Cereghino, and Sandra Cereghino, subject to the constraints previously described in the Court's discussion of claim preclusion.[5]

---

[5] Stated another way, Plaintiff may not bring his discrimination claim against the City, Donald Treanor, Richard Cereghino, or Sandra Cereghino based on allegations of conduct that occurred before September 28, 2021. Plaintiff also may not bring his discrimination claim against Richard Cereghino, Sandra Cereghino, and Donald Treanor based on allegations of conduct that occurred before July 19, 2022.

**b. Other Deficiencies**

The Court addresses additional deficiencies in Plaintiff's Complaint *sua sponte*, starting with Plaintiff's conversion claim.[6] Plaintiff alleges, presumably against only Richard Cereghino and Sandra Cereghino, a claim for conversion related to the "theft of public property." Plaintiff alleges that the Cereghinos have constructed several physical structures that "have encroached upon literally every city street and alleyway that adjoins their property lines." Plaintiff repeatedly states that the alleged "theft" pertains to public land, but Plaintiff does not allege any encroachment onto, or theft of, his property. Accordingly, Plaintiff's allegations do not state a claim for conversion.

This is so for two reasons. First, the tort of conversion generally applies only to chattel property, as opposed to real property. *See Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 413 (1989) ("Conversion is an intentional exercise of dominion or control over a *chattel* which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the *chattel*." (cleaned up) (emphases added)). Second, even if the tort of conversion were applicable to real property, the claim could not be sustained because Plaintiff is not "entitled to immediate possession of" the effected property. *See id.* ("This court has also held that one must be entitled to *immediate possession* of a chattel before he or she can successfully contend that the actor's failure to yield possession constitutes conversion." (cleaned up) (emphasis added)). Plaintiff's conversion claim is dismissed without prejudice.

Plaintiff also purports to assert a freestanding claim for "common-law conflict of interest." This claim is based on Plaintiff's allegations that Richard Cereghino and Sandra

---

[6] There may be deficiencies in Plaintiff's Complaint other than those raised *sua sponte* by the Court. Defendants may file an appropriate motion against any remaining claims in Plaintiff's Complaint or in an amended complaint.

Cereghino have used their influence over the City council "for personal gain[] or avoidance of consequences." Plaintiff also frames this claim in relation to the Cereghinos' alleged encroachment onto public land, and Plaintiff asserts that Richard Cereghino and Sandra Cereghino have used their positions and influence over the City council to gain approval for their projects. As discussed above, Plaintiff does not allege that the Cereghinos' projects encroach upon or affect Plaintiff's property or that Plaintiff has suffered any particularized injury resulting from the alleged conflict of interest that would permit him to assert such a claim. Plaintiff's claim for conflict of interest is dismissed without prejudice.

### 4. Summary

The Court dismisses *with prejudice* the following claims: (1) Plaintiff's claims against the City, Donald Treanor, Richard Cereghino, and Sandra Cereghino based on allegations of conduct occurring before September 28, 2021; (2) Plaintiff's claims against the City based on allegations of Oregon Public Meetings Law violations occurring before October 11, 2022; and (3) Plaintiff's claims against Richard Cereghino, Sandra Cereghino, and Donald Treanor based on allegations of conduct that occurred before July 19, 2022. Plaintiff may not replead these claims and allegations in an amended complaint.

Further, the Court dismisses *without prejudice* the following claims: (1) Plaintiff's claims against Andrea Kegel, Sandra Thomas, and Nick Nimms; (2) Plaintiff's ADA claim; (3) Plaintiff's claim under the Oregon Bicycle Bill; (4) Plaintiff's conversion claim; (5) Plaintiff's claim for conflict of interest. Plaintiff may attempt to replead these claims in an amended complaint if Plaintiff believes, in good faith and consistent with Rule 11 of the Federal Rules of Civil Procedure, that he can cure the deficiencies identified in this Opinion and Order.

## C.  Request for Sanctions

Included in Defendants' Motion to Dismiss is a request that the Court order Plaintiff to pay reasonable attorney's fees under 42 U.S.C. § 1988 and ORS § 20.015. Defendants argue that Plaintiff's history of filing lawsuits shows that Plaintiff will continue to litigate baseless claims if Plaintiff does not face "consequences."

The Court is not inclined, at this stage, to grant Defendants' request. Plaintiff is a *pro se* litigant who alleges that he is experiencing homelessness resulting from the events described in his Complaint. Further, as discussed above, some of Plaintiff's claims survive Defendants' Motion to Dismiss.[7] The Court denies Defendants' request for attorneys' fees without prejudice to renew, if warranted by Plaintiff's actions in the future in this lawsuit.

## D.  Motion for Entry of Default

The Court next addresses Plaintiff's Motion for Default. Plaintiff argues that Defendants have exceeded the time allowed under the Federal Rules of Civil Procedure to answer the Complaint and are therefore in "technical default." Defendants, however, have demonstrated an intent to defend this action, which is sufficient to prevent the entry of an order of default. *See* Fed. R. Civ. P. 55(a) advisory committee's note to the 2007 amendment (noting that "[a]cts that show an intent to defend have frequently prevented a default even though not connected to any particular rule"). Accordingly, the Court denies Plaintiff's Motion for Default.

Additionally, Defendants argue in response to Plaintiff's Motion for Default that Plaintiff has not completed service on all named Defendants—specifically, Defendants contend that Plaintiff has not served Donald Treanor. Plaintiff filed his Complaint on February 5, 2024; under

---

[7] Any claims not specifically discussed in the preceding section survive Defendants' Motion to Dismiss.

Rule 4(m) of the Federal Rules of Civil Procedure, Plaintiff was required to serve the Complaint on all Defendants no later than May 5, 2024. Accordingly, the Court extends the time for service and orders Plaintiff to file proof of service on Donald Treanor no later than August 23, 2024.

**E.  Motion to Strike**

Finally, the Court addresses Plaintiff's Motion to Strike. In that motion, Plaintiff argues that both motions filed by Defendants, the Motion for Extension of Time and the Motion to Dismiss, should be stricken as untimely. The Court addressed this issue earlier in this Opinion and Order, and no further discussion is needed. The Court denies Plaintiff's Motion to Strike.

## CONCLUSION

The Court GRANTS *nunc pro tunc* Defendants' Motion for Extension of Time (ECF 8). The Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (ECF 13) and DISMISSES Plaintiff's claims as stated in herein. Plaintiff may file an amended complaint on or before August 23, 2024, if Plaintiff believes that he can cure the deficiencies identified in this Opinion and Order consistent his obligations under Rule 11 of the Federal Rules of Civil Procedure. The Court DENIES Plaintiff's Motion for Default (ECF 12) and ORDERS Plaintiff to file proof of service on Donald Treanor on or before August 23, 2024, if Plaintiff wants to continue to prosecute this lawsuit against that defendant. The Court DENIES Plaintiff's Motion to Strike (ECF 16).

**IT IS SO ORDERED**.

DATED this 25th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge